Bradley, J.
The parties own and occupy adjacent lands in the town of Wheatland, county of Monroe, through which runs a stream known as Allen creek. It enters at the south line of the plaintiff’s land and runs in a northeasterly direction, crosses the line between their lands, and upon the land of the defendant supplies water to operate his mills. The head which gives the power to run the mills is furnished by means of an artificial dam in the creek. The plaintiff charges that the defendant has maintained since 1868 a dam of greater height than he was permitted to do by any existing right, and as a consequence the plaintiff’s lands were flooded, and an injury suffered by him for which he seeks to recover ; and a portion of the dam having been taken out, that because the defendant is proceeding to repair and replace it at an unauthorized height, the plaintiff seeks by judgment to enjoin him perpetually from so doing.
The plaintiff’s premises are known as lot Ho. 38, and came to him from his father, William Garbutt, who died in 1867. The defendant’s premises, lying east of the former, are known as lot Ho. 43, and were derived by conveyance in 1858 from his father, Philip Garbutt, who died in 1865. A dam to supply the water and power to run the mills had been maintained during, from, and after the year 1828, and the right, and its extent to set back by it, the water upon the plaintiff’s premises were derived from a deed made by William Garbutt to Philip Garbutt, of date February 6, 1828, by which was granted to the latter, “his heirs assigns forever, the right and privilege to keep and maintain the dam across Allen’s creek, in the town of Wheatland, which is known by the name of Garbutt’s Mills, and now occupied by the said party of the second part, the height which it is at present, which causes the water in said stream to 'overflow its north bank more or less for thirty-six rods up the stream from the east line of lot Ho. 38, which is now owned by the party of the first part, and causes the water to set back up the channel of said stream until it crosses the south line of said lot.”
The question presented by the issues for trial, and tried, was whether the defendant was seeking to maintain, and had maintained for any time, a dam higher than that prescribed by such deed. The dam of 1828 went out in 1857, and a new one was then made, which continued until 1868, when a portion of it went out, and it was rebuilt that year, and the northern portion of that dam was taken out in the spring of 1884. The defendant was proceeding with its reconstruction and repair when this action was
Ho complaint is made of the dam as reconstructed in *418 1857, but it is claimed by the plaintiff, and evidence on his part was given tending to prove that the dam of 1868 was higher than that of 1857, set the water back farther, and over his premises more than the description in that respect given by the deed of the effect of the dam of 1828. And that by the dam of 1884 the defendant was seeking to maintain a dam at least as high as or higher than that of 1868. The dam of 1857 was located a short distance further up the stream than its predecessor, and there is some conflict of evidence about the precise location of the dam of 1868, while there is evidence on the part of the plaintiff that it was further up on the stream, that on the part of the defendant is that it was 'substantially in the same place, and that the ridge timber of the south end of the dam of 1857 was continued in that of 1868, and that the latter was the same height as the former; and that the dam, as reconstructed and repaired in 1884, was no higher than those of 1828 and 1857. And on the part of the defendant evidence was given tending to prove that the water, by the dams constructed subsequently to that of 1828, did not set the water back any further or over any more land of the plaintiff than was such effect of that dam.
Much evidence was given on both sides upon this question. And it appeared that the situation and height of the water in the creek was affected more or less by rains and was not uniform. The statements of the witnesses in respect to the relative situation of the water in the stream had reference to different times, and the differences may have to some extent been occasioned by changed conditions arising from natural causes. And there is evidence to the effect that the dam of 1857 was leaky and did not set the water back as much as that of 1828. To support the contention on the part of the defendant that the dam of 1868, and that of 1884, were no higher than that of 1828, reference was made to three timbers extending from the southern bank of the creek into the stream a short distance below the location of the dam of 1868, and evidence was given tending to prove that they were timbers upon which the apron of the dam of 1828 rested and part of it. This, if true, was treated as an important fact for the defendant. This was a contested fact on the trial. The plaintiff gave evidence tending to prove that the dam of 1828 was not located where those timbers were, but at another point where a log appeared, which was claimed to have been in the foundation of the old dam. This the defendant sought to meet by evidence that the log was placed there in or about 1870, to support the trestle of a tramway constructed by him for the removal and dumping at the bank of the creek the refuse material from a lime kiln. The evidence *419 as a whole relating to and bearing directly and indirectly ■upon the main fact involved, presented a question of fact for the determination of the trial court.
And after a careful examination of all the evidence we cannot say that his conclusion was against the weight of the evidence, but think it was well supported by it.
There were some exceptions taken to the reception of evidence. Those exceptions do not, nor do any of them, appear to have been well taken, And as no point is made by the defendant’s counsel upon them, we do not deem it necessary to express any consideration in that respect.
The exceptions taken to the findings and refusals to find of the court go to the merits, and require no further special consideration.
After the decision was made by the trial court, and before judgment, the plaintiff moved at special term, held by the justice before whom the action was tried, for a new trial, on the grounds:
First. That upon the evidence already given, judgment should have been directed for the plaintiff.
Second. On the ground of newly discovered evidence.
The motion was made on the proposed case and upon, -affidavits, and was denied. It could not be properly made or heard on the first ground, as the only method for review of the trial was by appeal from the judgment. And in respect to the second ground of the application, the evidence which the plaintiff desired to add was cumulative in character, and it cannot be seen that it would likely change the result in the view which appears to have been taken by the trial justice of the evidence submitted to him at the trial. We think that the discretion of the court was not erroneously exercised in denying the motion. Geneva, I. and S. R. R. Co. v. Sage, 35 Hun, 95.
The judgment and order should be affirmed.
Haight and Lewis, JJ., concur.